WILLIAM E. WOOLLARD, Appellant, *v.* SCHAFFER STORES COMPANY, INC., Respondent, Impleaded with Another.

(Argued November 24, 1936; decided December 31, 1936.)

*Michael D. Reilly* and *Walter A. Fullerton* for appellant.

306

*I. Maurice Wormser* and *Harry M. Schaffer* for respondent.

O'Brien, J. Plaintiff leased a building located on North Pearl street in Albany to defendant Schaffer Stores Company, Inc., for a term beginning September 1, 1933, and expiring August 1, 1936, at a rental of $500 per month together with an additional sum equal to one per cent of all gross sales made at the demised premises. The lease provides that the entire premises will be occupied and used as a food store and food shop, that the tenant shall use substantially the entire main floor for its own purposes, but that the remaining parts of the building might be sublet for other lines of merchandising subject to the one per cent of gross sales to the landlord. The parties agreed that the tenant would not let or underlet any part of the premises without the written consent of the landlord under penalty of forfeiture and damages nor would it make any structural changes, except certain specified ones, without the landlord's written permission. Also the lease contains this provision: " If said lessee shall fail, for any reason, to so conduct its said business in said demised premises, then it agrees to pay lessor, in lieu of the percentage of sales reserved herein, the sum of Twenty-five ($25) Dollars a day for each and every business day it may not for any reason conduct the said business therein."

In September, 1934, the tenant, without the knowledge or consent of the landlord, sublet to Jay L. Woolman for a term of seven years a space ten feet by seventy feet on the main floor of the building and also a portion of the basement as a retail store for the sale of women's clothes. Woolman, with the consent of the tenant but without the consent or knowledge of the landlord, made certain

structural changes in the building different from those authorized by the lease between plaintiff and defendant. After the landlord had acquired knowledge of these alterations in the structure of the building, he served written notice September 19, 1934, upon the tenant that, due to the fact that the tenant had sublet a substantial portion of the main floor as a retail ladies dress shop in violation of the terms of the lease, he elected that the relation of landlord and tenant should cease and that the lease should become void. He also demanded that defendant remove from the premises and that he would hold it responsible for damages. On September 29, 1934, plaintiff wrote to defendant that in his opinion it would be necessary to begin an action of ejectment and that " any rentals you may pay hereafter will be received by me only with the understanding that the same are received without prejudice to the action which will follow your failure to comply with my notice of September 19." Defendant wrote plaintiff October 1 stating that its position was that the lease remained in full force and effect. The next day plaintiff again wrote defendant: " Have you any objection to my receiving your checks without prejudice to my rights? That is the question." Defendant, on October 6, notified plaintiff that " payments will be made as usual and they are tendered without strings or exceptions attached to them."

This action was begun October 24, 1934. In the record are checks drawn by defendant in payment for rent from October, 1934, to April, 1935, inclusive. On their face are printed notations of which these are typical: " By endorsement this check is accepted in full payment of the following account, Oct. rent." " Return if not correct. This check pays in full the following items, Nov. rent." " This check is in settlement of the following invoices, Jan. rent." Most of the checks are indorsed by plaintiff: " Subject to litigation pending." " Received subject to law suit pending." The checks for $500, dated October 2, 1934, December 3, 1934, and January 3, 1935,

for the October, December and January rent, are indorsed by plaintiff without any limitation, reservation or comment and were cashed by him.

The form of this action is one for a declaratory judgment. The complaint prays for a determination of the rights of these parties under the lease; the effect of the subletting and structural alterations upon the right to terminate the lease; whether the lease has been effectively canceled; plaintiff's right to receive the sum of $25 for each business day that the premises are occupied by Woolman in lieu of the one per cent of gross sales.

The referee found as facts, and the Appellate Division has affirmed, that, since the occupancy of Woolman, the defendant Schaffer Stores Company has not used substantially the entire main floor for its own purposes, that during the month of September, 1934, Woolman, with the consent of Schaffer Stores Company, made structural changes other than those permitted by the lease, that since the occupancy of Woolman the one per cent of gross sales have not amounted to the sum of $625 per month, and that Schaffer Stores Company has not paid to plaintiff the full amount of $25 for each day of Woolman's occupancy. Evidence supports these findings. The judgment entered upon the report of the referee awarded the sum of $750 against defendants Schaffer Stores Company and Woolman as cost of restoring the demised premises to the condition existing prior to the unauthorized structural changes and the sum of $5,310.39 against defendant Schaffer Stores Company at the rate of $25 per business day during Woolman's occupancy less the amount of one per cent of the sales paid by defendant to plaintiff during that time. The Appellate Division, reversing the referee's conclusions of law, held that plaintiff's receipt and acceptance of the payment of rent accruing subsequent to the notice of election to declare a forfeiture was a waiver and dismissed the complaint.

If the courts below were without jurisdiction to entertain this action for a declaratory judgment or if their assumption of jurisdiction constitutes an abuse of discretion, the judgment of dismissal should be affirmed irrespective of the merits which might necessarily be involved in an action of different form. Pursuant to section 473 of the Civil Practice Act and rule 212 of the Rules of Civil Practice the Supreme Court is vested with power to declare rights and other legal relations on request for such declaration " whether or not further relief is or could be claimed " and it also has discretion to decline to pronounce a declaratory judgment if, in its opinion, the parties should be left to relief by existing forms of action. " We may not limit by judicial construction a power which the Legislature has conferred without limitation. We may not define the bounds within which that power may be exercised, except as we find such bounds implicit in the statute, read in the light of established public policy." (*Westchester Mortgage Co. v. G. R. & I. R. R. Co.*, 246 N. Y. 194, 199.) While resort to the use of a declaratory judgment is usually unnecessary where an adequate remedy is already provided by another form of action, " no limitation has been placed or attempted to be placed upon its use." So we held in *James* v. *Alderton Dock Yards* (256 N. Y. 298, 305), but that judgment was necessarily reversed on the merits for the reason that plaintiff in no event was entitled to an equitable lien. The Supreme Court may, of course, exercise its discretion in refusing to proceed to a declaratory judgment when other remedies are adequate and that is all we held in *Newburger* v. *Lubell* (257 N. Y. 383). When, however, another action between the same parties, in which all issues could be determined, is actually pending at the time of the commencement of an action for a declaratory judgment, the court abuses its discretion when it entertains jurisdiction. (*Colson* v. *Pelgram*, 259 N. Y. 370.) We have never gone so far as to hold that, when there exists a genuine controversy requiring a judicial deter-

mination, the Supreme Court is bound, solely for the reason that another remedy is available, to refuse to exercise the power conferred by section 473 and rule 212. Here a genuine controversy existed, and the parties were unable to determine definitely the nature which the litigation should assume. Before this action was begun, plaintiff, in his letter of September 19, expressed the opinion that an action in ejectment would be proper. Respondent's brief suggests either summary proceeding or ejectment. The numerous issues arising from the pleading are sufficient to confer upon the court power to entertain jurisdiction and to decide them all in this single action. While it had discretion to refuse jurisdiction it was not bound so to do.

We agree with the Appellate Division that acceptance of rent by the landlord, after the acquisition of knowledge by him of the violation of the terms of the lease in subletting without the landlord's written consent, constitutes a waiver of the forfeiture. (*Ireland* v. *Nichols,* 46 N. Y. 413; *Murray* v. *Harway,* 56 N. Y. 337; *Collins* v. *Hasbrouck,* 56 N. Y. 157; *Conger* v. *Duryee,* 90 N. Y. 594; *McIntosh* v. *Rector, etc.,* 120 N. Y. 7; *Adams-Flanigan Co.* v. *Kling,* 234 N. Y. 497; *Schnell* v. *Perlmon,* 238 N. Y. 362; *Schuttinger* v. *Woodruff,* 259 N. Y. 212.) The same rule applies in respect to the other violations. The lease provides: " If default be made in the performance of *any* of the covenants or agreements herein contained, the said hiring, and the relation of landlord and tenant, at the option of the said party of the first part shall wholly cease and determine within ten days after the lessee receives written notice thereof from the landlord and fails to comply therewith; and the said party of the first part shall and may re-enter the said premises and remove all persons therefrom." On September 16, 1934, plaintiff discovered the unauthorized structural changes made in the building, but in his letter to defendant, dated September 19, in which he states his election to declare the lease terminated and to re-enter, he makes no refer-

ence to the structural changes but refers only to the sublease and subsequently he accepted rent as rent. The Appellate Division, applying by analogy the rule in *Littlejohn* v. *Shaw* (159 N. Y. 188) and the rule as stated in 2 Tiffany on The Law of Landlord and Tenant (pp. 1393, 1394), held that plaintiff had waived the violation which he had omitted to specify. It is doubtful whether the analogy of the *Littlejohn* v. *Shaw* doctrine is complete and whether the rule in *Cawley* v. *Weiner* (236 N. Y. 357) is not more nearly applicable. In any event defendant in its amended answer pleads that by reason of the payment and acceptance of rent plaintiff recognized defendant as his tenant and thereby waived *any and all* rights for the forfeiture of the lease.

Although plaintiff, by accepting rent, must be deemed to have waived his right to forfeit the lease, he was not thereby deprived of all his contractual rights under that instrument. Defendant violated that covenant by which it agreed to make no structural changes without the landlord's written permission. The parties stipulated on the trial that the cost of restoration of the building to its condition prior to Woolman's occupancy is $750, and we are of the opinion that plaintiff is entitled to that sum.

In respect to the covenant relating to payment of $25 per day, the Appellate Division held that, while the subletting to Woolman was a violation of the lease, the record shows that such violation did not have the effect of reducing plaintiff's rental income from the demised premises, and refused to allow plaintiff the $25 per day during Woolman's occupancy. As we interpret the lease, it provides for a cash rental of $500 per month plus one per cent of the gross sales on the entire premises. The provision in respect to payment of $625 per month applies only in the event that defendant should sublet the entire premises and, since the entire premises were not sublet, the finding that the one per cent of the gross sales have not amounted to $625 per month during the time that defendant sublet a portion of the premises to Wool-

man is immaterial. Both the referee and the Appellate Division rejected plaintiff's claim under that covenant. The material part of the lease relating to payment of $25 per day is this: "If said lessee shall fail, for any reason, to *so* conduct its said business in said demised premises, then it agrees to pay lessor, in lieu of the percentage of sales reserved herein, the sum of Twenty-five ($25) Dollars a day for each and every business day it may not for any reason conduct the said business therein." That language, indicating the manner in which the lessee's business shall be conducted, is immediately preceded by this provision: "The Lessee * * * will conduct a business therein similar in character to those which it has already established and is now conducting as 'Empire Food Market' on Hudson Avenue and Central Avenue in the City of Albany, New York, * * * and continuously carry on business therein during each business day of the term hereof and *utilize the first floor* of the Pearl Street level of the demised premises as a food center or market similar to that which is now being conducted in its said other stores, during the usual business hours of every business day throughout the demised term, and any extension thereof, and the Lessee Corporation agrees to advertise its business in such manner as it may deem suitable and to promote the sales of its merchandise in said store; and the Lessee agrees not to conduct, directly or indirectly, a similar store, or to be interested in any way in another within a distance of four (4) city blocks, as such blocks now exist, in all directions from said demised premises. Nothing herein shall be deemed to limit the kinds of merchandise, foods or otherwise, which the Lessee may sell or offer for sale, in the business conducted by it in the demised premises."

The purpose of the provision relating to payment of $25 per day, in lieu of the percentage of sales, must be to compel the lessee to carry on its business at this location .

during each business day for the term of the lease in the same manner as at its other stores, to utilize the first floor of the Pearl street level, to advertise its business, and to refrain from engaging in any competing business in the vicinity which might cause a decrease in gross sales. The fact that defendant, without plaintiff's written consent, sublet part of the premises on the Pearl street level, which we cannot say as matter of law is not a substantial part, is not sufficient to warrant the conclusion that defendant failed " to *so* conduct its said business in said demised premises." Woolman's gross sales were included in the one per cent which was paid monthly to plaintiff and accepted by him. Nothing in the record indicates that if defendant had occupied every square foot of area on the main floor, the gross sales would have been larger. Plaintiff has failed to prove any loss of rent due to the occupation by Woolman. So the Appellate Division held and we agree.

The judgment of the Appellate Division should be modified by directing judgment for plaintiff in the sum of $750, with interest thereon, and as so modified affirmed, with costs in this court to the appellant.

CRANE, Ch. J., LEHMAN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.